UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRANDON CHARLES HELMAN,<br><br>                Plaintiff,<br><br>    v.<br><br>CONSUMERS CREDIT UNION;<br>VISA, INC.,<br><br>               Defendants. | Case No. 1:25-cv-09394<br>Judge Sunil R. Harjani |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT CONSUMERS CREDIT UNION'S MOTION TO DISMISS

I.  **INTRODUCTION**

The Court should dismiss all claims asserted against Consumers Credit Union ("CCU") in this action because Plaintiff Brandon Charles Helman ("Plaintiff") fails to state a legally cognizable claim against CCU.

II. **PROCEDURAL BACKGROUND AND ALLEGATIONS IN THE COMPLAINT**

Plaintiff alleges that he is a resident of Ohio, that CCU is a corporation with a principal place of business in Illinois, and that Defendant Visa, Inc. is a Delaware corporation. Doc. 1-1, Complaint ("Compl.") at ¶¶ 7-10. Plaintiff claims $1,000,000 in damages. *Id*. at ¶ 153. On August 8, 2025, CCU filed its notice of removal on the bases of diversity and federal question jurisdiction. Doc. 1.

The factual allegations offered by Plaintiff are difficult to decipher. For example, Plaintiff alleges, wholly implausibly, that he "is able to legally create currency because it is a Federal Reserve member bank." Compl. at ¶ 46. As relief, he seeks a discharge of his loans

1

with CCU, a refund of all payments made on the accounts, and either $1 million in damages or issuance of a credit card "that has no credit limit and is automatically set-off each month." *Id*. at ¶¶ 151-154.

In doing so, the Complaint mimics allegations made by Plaintiff and other *pro se* plaintiffs in recent years seeking to avoid debts to financial institutions for allegedly refusing to accept "bills of exchange" or similar fictitious "tender instructions" as payment. *See*, *e.g.*, *Helman v. JPMorgan Chase Bank, N.A*., 2025 WL 2207920 (S.D. Ohio Aug. 4, 2025), *report and recommendation adopted*, 2025 WL 2483421 (S.D. Ohio Aug. 28, 2025); *Brandon Joe Willliams ® v. American Express Co. et al*, No. 2:24-cv-0163, Doc. 1 (C.D. Cal. Feb 26, 2024). Such allegations have been routinely dismissed as frivolous by federal district courts across the nation. *See, e.g., Marfoe v. Discover Bank,* 2025 WL 36194 (N.D. Ill. Jan. 6, 2025) (Coleman, J.) (dismissing claims brought under federal law with prejudice)*; Boeve v. Southstate Bank N.A.*, 2024 WL 3090561 (M.D. Fla. June 20, 2024) (granting motion to dismiss without leave to amend); *Knapp v. Compass Minnesota, LLC*, 2024 WL 2832502 (D.Minn. June 4, 2024) (granting motion to dismiss with prejudice); *Moore v. Discover Bank*, 2024 WL 2784878 (S.D.N.Y. May 28, 2024) (same).

Plaintiff, supposedly as "agent" for himself if his name is styled in uppercase letters,[1] asserts a mulligatawny stew of federal and state law claims against CCU, apparently related to loans with CCU that Plaintiff seeks to discharge. Compl. at ¶¶ 11-14, 151. Plaintiff asserts the following causes of action related to his account(s) with CCU:

---

[1] Plaintiff's "attempt to construe himself as some other person or a separate corporate or other entity … by notations such as 'ens legis' has no basis in law" and "spelling a name in uppercase letters … do[es] not create a different person or create an 'artificial entity' or a corporation under the law." *United Staes v. Hakim*, 2018 WL 6184796, at *2 (N.D. Ga. Aug. 22, 2018), *report and recommendation adopted*, 2018 WL 4791085 (N.D. Ga. Oct. 4, 2018). *Accord*, *U.S. v. Delatorre*, 2008 WL 312647, at *2 (ND. Ill. Jan. 30, 2008).

- (Count One) Breach of Contract;
- (Count Two) Breach of Fiduciary Duties;
- (Count Three) Money Had and Received;
- (Count Four) Fraud;
- (Count Five) Violation of 42 U.S.C. § 1994- Peonage;
- (Count Six) Unlawful Conversion;
- (Count Seven) Unjust Enrichment;
- (Count Eight) Libel and Defamation;
- (Count Nine[2]) Violation of 18 U.S.C. § 8
- (Count Ten) Violation of 18 U.S.C. § 1341;
- (Count Eleven) Violation of 18 U.S.C. § 1431.

According to Plaintiff, it was "improper" to use "extraneous and unnecessary Federal Reserve Notes" (i.e., U.S. Dollars) to pay the balance on his CCU credit accounts. Compl. at ¶ 18. Instead, he alleges a "proper" method of paying the account balance would be to "indorse the original collateral securities under qualified/special negotiation" that would then be exchanged for U.S. Dollars and pay down the balance of his account. *Id.* at ¶ 19. Simply put, these contentions find absolutely zero support in the law.

For the reasons set forth below, Plaintiff fails to and cannot state a claim against CCU upon which relief can be granted, and the Complaint must therefore be dismissed in its entirety with prejudice.

## III. LAW AND ARGUMENT

### A. Standard of Review

The Federal Rules of Civil Procedure provide that all pleadings which state a claim for relief must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the pleading standard as prescribed by Rule 8 does not require the plaintiff to set forth "detailed" factual allegations, it does require more than unsupported legal conclusions and conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662

---

[2] Count Eight appears twice in the Complaint; subsequent counts are re-numbered here for consistency.

3

(2009). Rule 8 requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, "labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Id*. Further, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 67879 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

When reviewing a motion to dismiss, a court must determine whether the complaint at issue contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). While a court must accept all allegations as true when assessing a motion under Rule 12(b)(6), to survive a motion to dismiss, he must still provide more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" for the complaint to be considered adequate. Bell v. City of Chicago, 835 F.3d 736, 738 (7th Cir. 2016). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557.

Although a plaintiff's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). But this does "not require a court to conjure

4

allegations on a litigant's behalf" or "create a claim for the *pro se* Plaintiff." *Profitt v. Divine Sol.*, 2010 WL 2203310, at *1 (W.D. Ky. May 27, 2010).

### B. Plaintiff's Claim for Breach of Contract (Count One) Fails Because Plaintiff Does Not Allege Facts Establishing that CCU Breached Any Contract.

To state a viable breach of contract claim, Plaintiff must—and fails to—plead sufficient facts to establish: (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff resulting from the breach. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 311 (N.D. Ill. 1995).

Here, however, Plaintiff's Breach of Contract claim (Compl. ¶¶ 74-76), fails to identify a contractual obligation owed to him by CCU, let alone any breach by CCU, and is devoid of a reference to the contents of said contract alleged to be breached. Instead, the facts supposedly supporting Plaintiff's cause of action are an allegation that Plaintiff was not advised of his "options" regarding "qualified/special indorsement[s]" and allegations concerning purported attempts to communicate between Plaintiff and CCU. *Id*. at ¶¶ 69-72. But Plaintiff does not allege that any of those attempts to communicate constitute a breach, nor could he. Plaintiff's breach of contract claim fails because he has not alleged the breach of any duty owed to him. In fact, while it is unclear what it is that Plaintiff claims "someone [should have] spoken to [him] about," *Id*. at ¶ 75, it is clear that the law does not require that each aspect of a contract be explained orally to a party prior to signing. *Hintz v. Lazarus*, 58 Ill. App. 3d 64, 66 (3d Dist. 1978). With respect to the remaining allegations, Plaintiff fails to—and cannot—allege that CCU had any contractual duty to respond to his "orders and questions," much less that it breached any such nonexistent duty.

As such, Plaintiff's breach of contract fails as a matter of law and must be dismissed with prejudice.

5

**C.     Plaintiff's Breach of Fiduciary Duty Claim (Count Two) Fails Because CCU Did Not Owe—or Breach—Any Fiduciary Duty to Plaintiff.**

In Count II, Plaintiff alleges that CCU breached a fiduciary duty because it should have advised Plaintiff "about the benefits of special/restrictive indorsements" and it "never attempted to clarify or perform" for him in connection with the "orders" that he presented to CCU. Compl. ¶¶ 84-89. The claim fails as a matter of law because lenders do not owe fiduciary duties to their borrowers, as the transaction is no more than an arms-length transaction between a debtor and a creditor. *Miller v. Am. Nat'l Bank & Trust Co.,* 4 F.3d 518, 520 (7th Cir.1993); *Geimer v. Bank of Am.*, N.A., 784 F. Supp. 2d 926, 932 (N.D. Ill. 2011); *ARH Distribs., Inc. v. ITT Commercial Fin. Corp.,* No. 87 C 511, 1987 WL 17834, at *3 (N.D. Ill. Sept. 28, 1987) (relationship between lender and borrower is not fiduciary relationship). Plaintiff has not alleged any kind of special relationship that would create a duty beyond the ordinary debtor-creditor relationship. Illinois law does not recognize this type of relationship as fiduciary in nature. *See Miller,* 4 F.3d at 520; *ARH,* 1987 WL 17834, at *3. This is doubly the case when it comes to the nonsensical advice about fictitious forms of payment that Plaintiff contends CCU had a duty to give him. Accordingly, Plaintiff's breach of fiduciary claim fails as a matter of law and must be dismissed with prejudice.

**D.     Plaintiff's Claims for "Money Had and Received" (Count Three) and "Unjust Enrichment" (Count Seven) Are Equally Meritless.**

Plaintiff's claims for money had and received and unjust enrichment are both fatally flawed because Plaintiff does not, and cannot, properly allege that CCU engaged in any wrongful conduct or was unjustly enriched by seeking repayment of the funds loaned to Plaintiff. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873 (7th Cir. 2022) (observing that where the existence of a contract between the parties is undisputed, as by incorporating by reference allegations of the existence of a contract, a quasi-contract claim will seldom survive a motion to dismiss).

Money had and received is a cause of action similar or identical to unjust enrichment. *In re Corus Bankshares, Inc.*, 503 B.R. 44, 55 (N.D. Ill. April 23, 2013) ("An action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff. The cause of action is one that is maintainable to recovery money either the theory of an implied contract or under the theory of a quasi contractual obligation.") (citation and internal quotation marks omitted). The claim arises only where the defendant who holds the funds obtained them wrongfully. *Id.*

Plaintiff's claims for money had and received and unjust enrichment are both fatally flawed for the same reason—Plaintiff has not, and cannot, alleged facts to establish that he conferred a benefit on CCU that CCU unjustly retained (or otherwise). Instead, Plaintiff's claim seems to be based on the unremarkable allegation that he owed a debt which he was required to pay using what he refers to as "entirely irrelevant Federal Reserve Notes" (*i.e.*, U.S. Dollars) or risk a lower credit score. Compl. ¶ 125. But, plainly, it is not actionable, much less wrongful, for CCU to retain "Federal Reserve Notes" (i.e., U.S. Dollars) that Plaintiff submitted to CCU to repay his debt. In essence, Plaintiff's unjust enrichment and money had and received claims appear to seek a declaration that a creditor's acceptance of a debtor's repayment of a debt is unjust.

This theory is nonsensical, and if allowed to stand, would frustrate any debtor's obligation to repay any creditor. Because it is not unjust or inequitable for CCU to receive repayment of the funds it loaned on credit, Plaintiff's claims for moneys had and received and unjust enrichment fails as a matter of law and should be dismissed with prejudice.

### E. Plaintiff's Fraud Claim (Count Four) Fails Because He Fails to Allege Any Fraudulent Statement With Particularity (or Otherwise).

Plaintiff's fraud claims fails because the Complaint does not, and cannot, allege the elements of those claims with the specificity required by Fed. R. Civ. P. 9(b). A claim for fraud does

7

not satisfy Rule 9(b) and must be dismissed unless the complaint alleges the "who what, when, where, and how" of the fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). This requirement includes "the identity of the person making the mis-representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (internal citations omitted).

Here, however, Plaintiff fails to allege "the time, place, and content" of any alleged misrepresentation with any particularity. Instead, it appears that Plaintiff's entire fraud claim is premised on a failure "to educate" him about the nonsensical notion that he can "avail himself of his optional indorsements," which he claims somehow "damages [him] materially due to valuable instruments being purloined and not available for plaintiff." Compl. ¶¶ 103, 106. There is no duty, however, for CCU to inform Plaintiff of a concocted theory of debt elimination. Since Plaintiff's fraud theory relies on an alleged silence, Plaintiff must also show CCU had a duty to speak. *Allensworth v. Ben Franklin Sav. and Loan Ass'n*, 71 Ill. App. 3d 1041 (2d Dist. 1979). This he does not and cannot do since CCU had no fiduciary duty or special relationship to its borrower, as stated earlier. Indeed, Plaintiff does not allege *any* statements, much less misrepresentations, by CCU. As such, he has failed to and cannot plead his fraud claim with anything resembling the required specificity. Additionally, Accordingly, Count Four should also be dismissed with prejudice and without leave to amend.

  **F.** **Plaintiff's Claim for Peonage (Count Five) Should be Dismissed Because Repayment of a Debt is not Involuntary Servitude.**

Plaintiff's claim that by obtaining and failing to pay a credit card he has been subject to "peonage," *i.e.*, a form of involuntary servitude "in which the victim is coerced by threat of legal sanction to work off a debt to a master," *United States v. Kozminski*, 487 U.S. 931, 943 (1988),

8

has no basis in fact, law, or common sense. To be clear, involuntary servitude requires that a victim have "no available choice but to work or be subject to legal sanction." *Id*. The statute that Plaintiff relies on to make this outlandish claim, which abolished peonage, provides as follows:

> The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.

Indeed, courts that have considered this novel theory have uniformly rejected it because, to state the obvious, the fact that a debt is due to be paid does not amount to "involuntary service or labor." *See, e.g.*, *Marfoe,* 2025 WL 36194 at *3 (N.D. Ill. Jan. 6, 2025); *see also Lutman v. Conley*, 2025 WL 1071687, *4 (N.D. Ga. Jan. 21, 2025); *Wilson v. GMFS Mortg*., 2023 WL 1542431, at *7 (M.D. La. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1802406 (M.D. La. Feb. 7, 2023) (dismissing similar claims because, as is the case here, "Plaintiff owes a debt; he has not been forced into slavery or involuntary servitude with respect to repayment of that debt."). Unless forced labor is required to pay off that debt, any claim under 42 U.S.C. § 1994 arising from repayment of a debt must be dismissed. *See, e.g.*, *Riser v. WSYX-TV ABC-6,* No. C2-02-091, 2002 WL 31409427, at *8 (S.D. Ohio July 17, 2002) ("Since Plaintiffs have not alleged that Defendants subjected them to involuntary servitude, [42 U.S.C. § 1994] provides no relief"); *Foskey v. Rendell*, 261 Fed. App'x 428, 430 (3d Cir. 2008) (affirming dismissal of peonage claim because plaintiff did "not allege that he ha[d] been coerced to work in violation of the Thirteenth Amendment, and thus, the complaint fail[ed] to state a claim"); *Wilson*, at *id.*; *Burns v. First Am. Tr. Servicing Sols., LLP*, No. C 11-0023 CW, 2011 WL 1344214, at *5 (N.D. Cal. Apr. 8, 2011), aff'd, 474 F. App'x 514 (9th Cir. 2012) (dismissing plaintiffs' claim under 42 U.S.C. § 1994, where a debt existed because

"Plaintiffs do not allege that either of these Defendants has required Plaintiffs to work for it until any debt is retired.").

Plaintiff's peonage claim is premised on the unremarkable fact that he has incurred and therefore owes a debt or he fears his credit score will be negatively impacted. Compl. at ¶ 111. This is not, by any stretch of the imagination, sufficient to support a claim that anyone, let alone CCU, subjected him to "involuntary servitude" or coerced him to work to pay off a debt. Thus, Plaintiff's claim for peonage (Count Five) must be dismissed with prejudice.

### G. Plaintiff's Claim for Unlawful Conversion (Count Six) Fails Because He has not Alleged that any Property was Wrongfully Withheld

Plaintiff has not alleged that any property has been converted, only that he allegedly incurred and was thus obligated to pay his credit card with "irrelevant and extraneous negotiable instruments called Federal Reserve Notes"—*i.e.*, he was somehow wrongly required to pay in U.S. Dollars. Compl. at ¶¶ 18, 115. This does not in any way state a claim for conversion, which would require Plaintiff to show that "(1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." "a tortious conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute." *Eagle Forum v. Phyllis Schlafly's American Eagles*, 451 F.Supp.3d 910, 916-17 (S.D. Ill. April 1, 2020); UnitedBizJet Holdings, Inc. v. Gulfstream Aerospace Corp., 318 F.Supp.2d 680, 681 (N.D. Ill. 2004) ("Only if the money at issue can be described as 'specific chattel'- in other words, 'a specific fund or specific money in coin or bills'- will conversion lie").

Here, Plaintiff has not identified tangible or intangible property that has been converted, and he instead alleges that he was "forced to serve in a slavery position due to complete fraud

10

regarding the indorsement of the negotiable instruments produced on these accounts." Compl. at ¶ 120. But Plaintiff does not even suggest that he has a property interest that may properly be the subject of a conversion claim, but rather alleges that any payment made was to pay off his own credit card balance. *Id*. at ¶ 116. Plainly, CCU's alleged acceptance of payment on a debt owed to CCU is not "conversion," and Plaintiff alleges no facts whatsoever to establish that CCU wrongfully withheld any property belonging to Plaintiff. As such, Plaintiff fails to state a claim for conversion and Count Six must be dismissed with prejudice.

### H. Plaintiff's Claim for Libel and Defamation (Count Eight) Lacks Necessary Facts to State a Claim upon which Relief Can be Granted

Plaintiff's claim for libel and defamation in Count Eight pertains to a letter he allegedly received from CCU dated January 27, 2025. Compl. ¶ 136. To establish defamation, a plaintiff must show that the defendant made a false statement about the plaintiff, there was an unprivileged publication to a third party by the defendant, and the publication damaged the plaintiff. *Green v. Rogers*, 234 Ill.2d 478, 491. Publication is an essential element to a cause of action for defamation. *Id*. Crucially, however, Plaintiff does not allege (nor can he) that the letter was communicated by Defendant to anyone other than Plaintiff. As such, it fails the publication requirement for a libel or defamation claim (libel being but a written form of defamation).

Additionally, the substance of the statement must be pled with sufficient precision and particularity as to permit initial judicial review of its defamatory content and so that defendant may properly formulate proper defenses, including a qualified privilege, innocent construction, or required proof of actual damages. *Id*. at 492. Here, the January 27, 2025 letter is not attached or set forth *in haec verba* in the Complaint, resulting in loose and faulty reference to its contents. Contrary to Plaintiff's bare assertion that Plaintiff is referred to in the letter as a "sovereign citizen," the letter does not refer to Plaintiff by any name other than his own, nor does it state that Plaintiff is a

11

sovereign citizen, financially irresponsible, untrustworthy, or unable to meet financial obligations. Even so, these alleged statements are capable of an innocent construction in the context of Plaintiff's refusal to pay his debt, and none of these categories of statements are defamatory *per se*, which is limited to: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in his or her profession; and (5) words that impute a person has engaged in adultery or fornication. *Greene*, 234 Ill.2d at 492. Plaintiff likewise cannot state a cause of action for *per quod* defamation, where he failed to itemize his losses or plead specific damages of actual financial injury. *Muzikowski v. Paramount Pictures Cor*p., 322 F.3d 918 (7th Cir. 2003). Therefore, Plaintiff's claim for libel and defamation fails as a matter of law and must be dismissed.

> **I.** **Plaintiff's Claim for Violation of 18 U.S.C.§ 8 (Count Nine) Fails Because 18 U.S.C. § 8 Merely Defines a Term and Does not Create a Cause of Action.**

Plaintiff's claim for violation of 18 U.S.C. § 8, which defines the term "obligation or other security of the United States," fails because 18 U.S.C. § 8 "creates no cause of action against anyone by anyone; it simply defines a term that is used in other federal criminal statutes." *Nunez v. Credit Acceptance Corp.*, 2024 WL 4202448, at *3 (D. Conn. Aug. 27, 2024) (citing *Slaughter v. US Cellular*, 2023 WL 9051307, at *4 (E.D. Wis. Dec. 29, 2023)); *see also Arnold v. Santander Consumer USA,* 2025 WL 1358546, at *3 (D. Conn. May 9, 2025) (18 U.S.C. § 8 does "not provide a valid cause of action."); *Gerken v. Cap. One Fin. Corp.*, 2024 WL 5378958, at *3 (N.D.N.Y. Nov. 27, 2024), *report and recommendation adopted*, 2025 WL 47962 (N.D.N.Y. Jan. 8, 2025).

18 U.S.C. § 8 merely provides a definition—it does not create a private cause of action. *See Goodwin v. Flagstar Bank*, 2020 WL 9762478, at *1 (W.D. Mich. Feb. 26, 2020) (affirming

12

dismissal of claim under § 8 because the plaintiff had "not explained how he has a private cause of action, a civil remedy, against a financial institution based on the definition found in Title 18."). As such, Count Nine likewise fails to state a claim and should be dismissed with prejudice.

### J. Plaintiff's Claim Under 18 U.S.C. § 1341 (Count Ten), a Criminal Statute that Does Not Create a Private Right of Action, Fails.

Count Ten of the Complaint, for violation of 18 U.S.C. § 1341, a federal mail fraud statute, fares no better. 18 U.S.C. § 1341 is a criminal statute setting forth a fine or imprisonment of 20 years for a violation. However, "there is no private action available under 18 U.S.C. § 1341 and courts have uniformly held than an implied private right of action cannot be maintained under the federal mail fraud statute." *Foley v. Plumbers & Steamfitters Local No. 149*, 109 F.Supp.2d 963, 970 (C.D. Ill. July 19, 2000); *citing Bajorat v. Columbia-Breckenridge Development Corp.*, 944 F.Supp. 13871, 1378 (N.D. Ill. 1996). Because 18 U.S.C. § 1341 does not create a private cause of action, Count Ten fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

### K. A Passing Reference to 12 U.S.C. § 1431 (Count Eleven) is Insufficient to State a Claim.

Plaintiff's claim for an alleged violation of 12 U.S.C. § 1431, which only applies to a "Federal Home Loan Bank," also fails. *See Algee v. BA Credit Card Funding, LLC,* 2024 WL 5298644,*2 (S.D. Ill. Dec. 18, 2024) (finding the statute does not provide a private right of action that a private citizen can pursue against a defendant that is not a federal home loan bank). CCU is not a Federal Home Loan Bank, and Plaintiff does not (and cannot) allege otherwise. For that reason alone, Count Eleven fails to state a claim. Further, Plaintiff does not identify any facts to support his claim for a violation of 12 U.S.C. § 1431, and instead makes only passing reference to the statute. A reference to 12 U.S.C. § 1431 without "any facts relating to this statute" or any

13

suggestion "how it might apply to" Plaintiff's claims against [CCU]" is insufficient to "state a viable claim under the statute." *Thomas v. Fam. Sec. Credit Union*, 2024 WL 478070, at *6 (S.D. Ala. Jan. 17, 2024) (collecting cases). Therefore, Count Eleven fails to state a claim and should be dismissed with prejudice.

## IV. CONCLUSION

For these reasons, every single claim in the Complaint fails to state a claim for which relief can be granted, and it should be dismissed with prejudice and without leave to amend since amendment would be futile.

**GORDON REES SCULLY MANSUKHANI LLP**

By: */s/ Kevin A. Ameriks*
Kevin Ameriks (#6292277)
1 N. Wacker Drive Suite 1600
Chicago IL 60606
Tel: 312-565-1400
E-mail: kameriks@grsm.com
*Attorneys for Consumers Credit Union*

<u>CERTIFICATE OF SERVICE</u>

   The undersigned certifies that he served a true copy of the foregoing on the date of filing via email to Plaintiff at <u>bhrealnm@gmail.com</u>, with a copy also sent via regular mail postage prepaid to:

Brandon Charles Helman
122 W. Wyandot Ave., P.O. Box 22
Upper Sandusky OH 43351

                   */s/ Kevin A. Ameriks*